

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00088-CR

JOEY BALERO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2011-431,252, Honorable Bradley S. Underwood, Presiding

April 9, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Joey Balero, was indicted for the offense of aggravated robbery[1] enhanced by a prior felony conviction.[2] The jury found appellant guilty of the offense of aggravated robbery. Appellant elected to have the trial court determine punishment. The trial court found the allegations contained in the enhancement paragraph "True" and sentenced appellant to confinement in the Institutional Division of the Texas

---

[1] See TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011).

[2] See id. § 12.42(c)(1) (West Supp. 2013).

Department of Criminal Justice (ID-TDCJ) for 45 years.  Appellant appeals contending that the evidence was insufficient to support the jury's verdict.  We will affirm.

Factual and Procedural Background

On April 24, 2011, Daniel Castaneda was driving on Buddy Holly Avenue when a white SUV passed him on the passenger side of his vehicle.  As Castaneda attempted to enter a turn lane, the white SUV suddenly veered in front of him and stopped abruptly.  Castaneda attempted to stop, but ended up colliding at slow speed with the rear of the SUV.  The driver of the SUV got out and came to the driver's window demanding money from Castaneda.  Appellant, who was a passenger in the SUV, exited the vehicle with a rifle, later identified as an "assault type weapon."  Castaneda testified that the driver told appellant to shoot them.  Castaneda testified that he heard the weapon click as if appellant had attempted to fire it.  Appellant eventually got the rifle operational and fired a shot over the top of the car.  During this time, the driver was demanding money from Castaneda.  Eric Paez was a passenger in Castaneda's vehicle and testified he did not recall a shot being fired.  After the shot was fired, the driver of the SUV and appellant got back in the SUV and left the area.

Castaneda followed the SUV, obtained the license plate number, and called 911 to report the incident.  Castaneda was advised to stop following the vehicle and pull over and await the police.  Castaneda subsequently was advised to go to the police station and did so.  At the station, he was advised that the SUV had been stopped and was directed to the scene to talk to the investigating officers.

Corporal Jimmy Fair of the LPD had heard the call about the incident and located the SUV.  A short chase ensued until the SUV crashed into a used car lot at the corner of 19th Street and Avenue N.  The driver and appellant both abandoned the vehicle, and a foot chase resulted in both being captured shortly thereafter.  After both suspects were taken into custody, a semi-automatic rifle was located in the SUV.  Also located in the SUV were two red bandanas.  Castaneda later testified that both the driver and appellant were wearing red bandanas at the time of the incident.

At the scene of the incident, the LPD located a witness, Jimmy Sandoval, who saw part of the incident and heard the shot fired.  He assisted an LPD officer in locating a spent shell casing that, later testing revealed, had been fired by the semi-automatic rifle that was recovered from the SUV.  Sandoval also alerted the police to the fact that the security cameras from a night club located at the scene might have recorded the incident.  The security camera footage was recovered by the LPD and was played before the jury.  The security camera footage showed Castaneda's vehicle and the SUV.  The footage also showed some sort of interaction with the occupants of the SUV and the occupants of Castaneda's vehicle.  However, the security camera footage did not record any audio and the shot could not be heard.  Yet, patrons of the club could be seen scurrying for cover, indicative of a shot having been fired.

Appellant pointed out, during cross-examination of Castaneda, that Castaneda had never told the police that Paez was a passenger in the vehicle.  In fact, he denied that anyone was in the vehicle with him, both at the time of his initial interview at the scene of the apprehension of appellant and later in a recorded statement to a detective.  Paez testified that he had outstanding warrants for his arrest for traffic offenses and had

told Castaneda that he could not be involved. All of these facts were testified to before the jury.

After hearing all of the evidence, the jury convicted appellant of the offense of aggravated robbery. Appellant elected to have punishment determined by the trial court and, after hearing the punishment evidence, the trial court assessed appellant's punishment at confinement in the ID-TDCJ for a period of 45 years.

Appellant appeals his conviction in a single issue. Appellant contends that the evidence was insufficient to support the jury's verdict of guilty. We will affirm the judgment of the trial court for the reasons hereinafter set forth.

## Sufficiency of the Evidence

### Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate

4

question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

Analysis

To prove the allegations in the indictment, the State had to prove that: 1) appellant, 2) in the course of committing theft, with intent to obtain or maintain control of said property, 3) intentionally or knowingly, 4) placed Daniel Castaneda, 5) in fear of imminent bodily injury or death, and 6) while using or exhibiting a deadly weapon, to-wit: a firearm.

Appellant's sole argument against the sufficiency of the evidence is based upon inconsistencies in Castaneda's reports to the police about whether anyone was with him on the night of the incident. Relying on this fact, appellant contends that Castaneda's testimony was not believable. The testimony reveals that this fact was pointed out to the jury during both the testimony of Paez and Castaneda. As such, it was then up to the jury to determine whether they thought either witness was a credible witness. *See Brooks*, 323 S.W.3d at 899. We defer to the jury's determination on questions of credibility. *See id.*

Further the record reveals that a minor collision occurred involving Castaneda's vehicle and the SUV, and that:

1) Appellant and the driver of the SUV approached Castaneda's vehicle. The driver immediately started demanding money.

2) Appellant approached the vehicle carrying a semi-automatic weapon.

3) When Castaneda told the driver he did not have any money to give him, the driver told appellant to shoot them.

4) Appellant apparently pulled the trigger once but nothing but a click was heard.

5) Appellant then chambered a round and fired over the top of Castaneda's vehicle while the driver continued demanding money.

6) Both the driver and appellant were wearing red bandanas over their faces.

7) The driver's bandana slipped and Castaneda was able to notice certain distinguishing features of his face, to-wit: gold teeth, small tattoos, and short dread-lock type hairstyle.

8) The driver and appellant fled the scene and Castaneda was able to obtain the license plate number of the SUV.

9) Corporal Fair spotted a vehicle matching the description and began trying to stop it.

10) The SUV crashed and the driver and appellant were both apprehended, almost immediately.

11) Located in the SUV was a semi-automatic weapon and two red bandanas.

12) The driver's appearance matched the description that Castaneda provided, to include: gold teeth, small tattoos, and short dread-lock type hairstyle.

13) Sandoval, witness at the scene of the aggravated robbery, assisted police in finding the spent shell casing.

14) Sandoval testified about hearing the shot being fired.

15) Test of the shell casing revealed it had been fired by the semi-automatic rifle found in the SUV.

16) The security cameras located at the scene showed the confrontation between the driver, appellant, and the passengers in the Castaneda vehicle.

Based upon this evidence, we find that the jury's verdict is supported by sufficient evidence.  *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912.  Appellant's argument to the contrary is overruled.

Conclusion

Having overruled appellant's single issue, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.